UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REESE E. ENGLEKING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:16-cv-00041-DML-SEB |
| | ) |
| NANCY A. BERRYHILL,[1] Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Plaintiff Reese E. Engleking applied in February 2013 for Disability

Insurance Benefits (DIB) and Supplemental Security Income disability benefits

(SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that

he has been disabled since December 14, 2012.  Acting for the Commissioner of the

Social Security Administration following a hearing held November 17, 2014,

administrative law judge Monica LaPolt issued a decision on December 10, 2014,

finding that Mr. Engleking is not disabled.  The Appeals Council denied review of

the ALJ's decision on February 2, 2016, rendering the ALJ's decision for the

Commissioner final.  Mr. Engleking timely filed this civil action under 42 U.S.C. §

405(g) for review of the Commissioner's decision.

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of the Social Security
Administration.  As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn
W. Colvin as the defendant.

Mr. Engleking contends the Commissioner's decision must be reversed and remanded because the ALJ cherry-picked the evidence, failed properly to evaluate certain medical evidence, and provided a significantly flawed credibility analysis.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Mr. Engleking's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[2] Mr. Engleking is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory

---

[2]    Two programs of disability benefits are available under the Social Security Act:  DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled.  The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the

4

evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

<u>Analysis</u>

**I.    The ALJ's Sequential Findings**

Mr. Engleking was born in 1967, was 45 years old at the alleged onset of his disability in 2012, and was 47 years old at the time of ALJ's decision. Beginning in about September 2014 and continuing through the time of the administrative hearing in November 2014, Mr. Engleking was working part-time, 15 hours or less per week, driving people to medical appointments. (R. 46-47). Other than this job, Mr. Engleking had not worked since his alleged onset date of December 14, 2012. (R. 20). He had previously worked for about 13 years, from February 1996 to April 2009, in the die maintenance department of a forging company, a physically demanding job. (R. 275-77, 286-87). Mr. Engleking's employment as a forger ended because his medical conditions prevented him from performing his work. (R. 285).

At step one, the ALJ found that Mr. Engleking had not engaged in substantial gainful activity since his alleged onset date. At step two, she identified the following severe impairments: "status post hip replacement on the left,

avascular necrosis of the left hip,[3] mild arthropathy[4] of the lumbar spine, mild

degenerative joint disease of the right knee (in combination with other physical

impairments), emphysema, and anxiety." (R. 21). At step three, she found that no

listings were met or medically equaled. Mr. Engleking does not raise any error with

respect to the ALJ's steps one through three determinations.

In her RFC, the ALJ limited Mr. Engleking to sedentary work as defined at

20 C.F.R. § 404.1567(a) (described as work which "involves sitting" and walking and

standing only occasionally, and involves lifting no more than 10 pounds at a time

and occasionally lifting and carrying articles like files and small tools). She also

limited him to working foot controls only occasionally and she prevented work

requiring more than occasional stooping, kneeling, crouching, crawling, and

climbing of ramps and stairs. With respect to Mr. Engleking's mental capacity, the

ALJ stated that he has the capacity to understand, remember, and follow simple

instructions, and that in the context of simple, routine, repetitive, concrete, and

tangible tasks, Mr. Engleking can "sustain attention and concentration skills

sufficient to carry out work-like tasks with reasonable pace and persistence." (R.

24).

---

[3]     Avascular necrosis "is the death of bone tissue due to a lack of blood supply."
*See http://www.mayoclinic.org/diseases-conditions/avascular-
necrosis/basics/definition/con-20025517.* As the ALJ discussed later in her
decision, Mr. Engleking's medical records show that his right hip also was afflicted
by avascular necrosis.

[4]     Arthropathy means "joint problem" and the term is often used by doctors
interchangeably with the term "arthritis," which refers to joints that are inflamed.
*See http://answers.webmd.com/answers/1198195/what-is-arthropathy.*

The ALJ determined that her RFC prevents Mr. Engleking from performing his past relevant work which, according to the vocational expert, was skilled work at the heavy level of exertion. At step five, and based on the VE's testimony, the ALJ decided Mr. Engleking is capable of performing the functions of three sedentary-level, unskilled jobs that exist in significant numbers in the relevant economy (lens inserter, document preparer, and escort vehicle driver), and therefore is not disabled.

## II.     Mr. Engleking's Assertions of Error

Mr. Engleking contends that the ALJ's RFC is erroneous and not supported by substantial evidence because (1) she selectively reviewed the evidence by emphasizing that which favored her ultimate conclusion and ignoring a substantial amount of evidence detracting from her conclusion, (2) she did not properly evaluate the four GAF scores in the record, and (3) her credibility determination is patently wrong.

The court starts with the plaintiff's claimed error that the ALJ's credibility determination is patently wrong. As is evident below, the other claimed errors are subsumed in the analysis.

## III.    The ALJ's credibility determination is patently wrong and requires remand.

Social Security regulation 96-7p requires an ALJ to consider a claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other pertinent evidence that sheds light on the claimant's functional limitations. That other evidence can include the claimant's daily living activities,

7

the severity and intensity of the claimant's symptoms, precipitating and aggravating factors, medication, treatment, and other measures undergone by the claimant to relieve his symptoms, and the efficacy and side effects of the medication and treatment. 20 C.F.R. § 404.1529(c)(3). Because the ALJ sees and hears the claimant, her assessment of the claimant's credibility is entitled to special deference from the court. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). The court's role is "limited to examining whether the ALJ's determination was 'reasoned and supported,' and it may not overturn the ALJ's finding unless it is 'patently wrong.'" *Elder v. Astrue,* 529 F.3d 408, 413-414 (7th Cir. 2008).

The ALJ's discussion of Mr. Engleking's credibility is replete with reasons that either lack support in the record or do not detract from a person's credibility. The court addresses below three facets of the ALJ's credibility analysis that are particularly problematic. When an ALJ's credibility determination is this error-infected, remand is required because the court cannot determine whether the ALJ would otherwise have come to the same conclusion about the claimant's ability to work. *See Allord v. Barnhart,* 455 F.3d 818, 821 (7th Cir. 2006) (a credibility determination is a judgment call and when the ALJ "based his judgment call on a variety of considerations but three of them were mistaken," the court cannot be sure that the same determination would be made had he not erred).

**A. The ALJ's conclusion that Mr. Engleking is not believable because his limited activities cannot be verified and must be attributable to something other than his medical conditions is not supported by the record.**

Mr. Engleking has undergone core decompression surgeries for his left hip (May 2011) and his right hip (July 2013) to treat his avascular necrosis—the dying of bone tissue because of a lack of blood supply. That surgery is a prophylactic surgical intervention; dead tissue on the femoral head bone is removed to stimulate bone repair. *See http://emedicine.medscape.com/article/86568-treatment.* If the disease continues to advance, a partial or total hip replacement may be necessary. *Id.* Mr. Engleking had half of his left hip joint replaced in September 2011 (a hemiarthroplasty) and, according to his testimony, was scheduled for a right hip replacement in the summer of 2013, but that surgery was postponed because back problems were also discovered. (R. 25-26). Mr. Engleking testified that he feels constant pain in both his right hip and left hip that makes it very difficult for him to sit or stand for more than 30 minutes at a time without the pain increasing to levels that are very difficult to endure. If he walks more than 75 yards, the pain also worsens to a level of 7/10 and sometimes 9/10. Mr. Engleking has had physical therapy, an injection to treat his back arthritis, is seen at a pain clinic, takes pain medication, and uses a TENS unit[5] to treat pain.

Mr. Engleking lives in a small, one-room, shed-like building situated off of his mother's home garage. He testified that his daily activities are minimal—he

---

[5]     TENS stands for Transcutaneous Electrical Nerve Stimulation and is used to treat pain.

vacuums the small room, does laundry, mows his mother's grass for 15-20 minutes

at a time using a riding lawn mower, and shops for groceries. Mr. Engleking

testified that dressing and bathing can be difficult because of pain caused when he

needs to bend to put on pants and socks or to wash his legs and feet. In the couple

of months before the administrative hearing, he got a part-time job driving people to

medical appointments within his surrounding area (of Seymour, Columbus, and

North Vernon, Indiana) though sometimes the appointments are in Indianapolis.

Mr. Engleking testified that when he must travel to Indianapolis (which is about an

hour from his Seymour home), he has to break up the drive.

Mr. Engleking also discussed his mental health problems and that he was

prescribed and took medication and attended counseling sessions. Still, he said he

suffers from crying spells, agitation or irritation, and has difficulty sleeping.

The ALJ found that Mr. Engleking's description of the limiting effects of his

impairments on his daily living activities was not "strong evidence" that he was

disabled. She disbelieved they were as Mr. Engleking described them. In making

this credibility finding, the ALJ stated:

> Although the claimant has described daily activities, which are fairly
> limited, two factors weigh against considering these allegations to be
> strong evidence in favor of finding the claimant disabled. First,
> allegedly limited daily activities cannot be objectively verified with any
> reasonable degree of certainty. Secondly, even if the claimant's daily
> activities are truly as limited as alleged, it is difficult to attribute that
> degree of limitation to the claimant's medical condition, as opposed to
> other reasons, in view of the relatively weak medical evidence and
> other factors discussed in this decision.

(R. 34). These reasons are not sensible and are not supported by the record.

10

The fact that Mr. Engleking's activities "cannot be objectively verified" is not a good reason to reject their existence. A claimant is not required to provide "objective verification"—such as a "day in the life" video—to prove that what he says about the way he spends his days and the activities he engages in are true. Moreover, Mr. Engleking provided some corroborative evidence through a third-party function report written by his mother.

The court also cannot follow the ALJ's logic in finding that Mr. Engleking's limited functioning in his daily living activities must be attributable to something other than his medical condition "in view of the relatively weak medical evidence" and "other factors." It is not at all clear what the "other factors" are or what medical evidence has been deemed "relatively weak."

Mr. Engleking presented substantial evidence of serious problems with his hips, and he presented medical evidence to substantiate his back pain. The medical evidence is not "weak" at all. He suffers from a disease in which his hip bone tissue dies from a lack of proper blood supply. A portion of his left hip has been replaced. He has undergone a surgical procedure to address the right hip and may need a total right hip replacement. (R. 28). He has undergone significant treatment in addition to surgery. He takes pain medication, is seen at a pain clinic, and uses a TENS unit. It is unclear what more the ALJ believed Mr. Engleking should do. She mentioned many times that he did not use a cane, but it does not follow from the lack of an ambulatory device that his hip impairments and pain are not as limiting as he alleges. The ALJ did not suggest or cite any medical evidence to

11

support an inference that a person who engages in the minimal activities Mr.

Engleking testified about would use a cane if the severity of the impairments and

their limiting effects are as Mr. Engleking said they were.

Moreover, the ALJ highlights evidence to suggest Mr. Engleking's hip

problems are not serious enough to cause Mr. Engleking's symptoms, while ignoring

contrary evidence. For example, she stated that when Mr. Engleking saw a new

doctor, his "only real complaint was his right knee" and the doctor's report did not

mention hip instability. The ALJ did not cite any record to support her statement,

but as Mr. Engleking points out, even if the ALJ was referring to certain records

identified by the Commissioner in her brief (R. 722-25), the knee pain was a new

problem treated by an orthopedist in October 2014. A medical visit to treat a new

problem does not logically indicate that Mr. Engleking's hip issues had resolved.[6]

The ALJ also mentioned that Mr. Engleking had "decreased" range of motion in his

hips, but she failed to note the medical evidence of just how starkly decreased from

normal his range of motion was. *See* Dkt. 22 at pp. 3-4. It is simply inappropriate

for an ALJ to discount a claimant's credibility because of "relatively weak" medical

---

[6]     Further, the medical records show that Mr. Engleking received a specific
referral to the orthopedist for treating his new knee pain. It is not surprising that
the orthopedist's records indicate that the "chief complaint" for which he is being
seen is his right knee. Further, the medical visit documenting the new referral to an
orthopedist to treat the right knee notes Mr. Engleking's chronic bilateral hip pain.
(R. 734).

evidence when the ALJ leaves out of her discussion strong medical evidence that contradicts her more benign descriptions.[7]

That criticism also applies to the ALJ's discussion of GAF scores assigned by different mental health clinicians. The ALJ acknowledged the existence of a low GAF score of 49 from an April 2013 consultative examination and a low score of 40 from a January 2014 mental status examination, but she determined that GAF scores are merely snapshots in time of mental health functioning and do not provide a reliable longitudinal picture of functioning. She then failed to acknowledge other GAF scores, in these same very low ranges, over a longitudinal time frame. As Mr. Engleking points out, he consistently and over time has been assigned GAF scores in the same very low ranges (35 in July 2011, 45 in August 2012, 49 in April 2013, and 40 in January 2014), thus suggestive that, for him, they are an important evidence of low functioning and are strong, and not weak, support for the limitations Mr. Engleking claims he has. *See Yurt v. Colvin,* 758 F.3d 850, (7th Cir. 2014) (though ALJ was not required to individually weigh low GAF scores, her discussion revealed a "larger general tendency to ignore or discount evidence favorable to Yurt's claim, which included GAF scores from multiple physicians suggesting a far lower level of functioning than that captured by the ALJ's . . .RFC").

---

[7]    The ALJ's omission of evidence that helps show how seriously Mr. Engleking's hips are affected (with documented limited range of motion and active disease) also detracts from her statement that she found Mr. Engleking was too dramatic during his hearing testimony by "acting as if his hips were giving out on him." (R. 30).

**B. The ALJ inappropriately discounted Mr. Engleking's credibility because he did not stop smoking.**

The ALJ also criticized Mr. Engleking for continuing to smoke cigarettes after he was diagnosed with emphysema, and found his behavior made him less credible. (R. 30). But as the Seventh Circuit has noted, a claimant's failure to quit smoking, because of its addictive nature, is "an unreliable basis on which to rest a credibility determination." *Shramek v. Apfel,* 226 F.3d 809, 813 (7th Cir. 2000).

**C. The ALJ's failure to acknowledge Mr. Engleking's work history detracts from her negative credibility finding.**

The ALJ's failure to consider Mr. Engleking's strong work history in finding him not credible is also problematic in this case. A claimant with a good work record is entitled to "substantial credibility." *Hill v. Colvin,* 807 F.3d 862, 868 (7th Cir. 2015). Mr. Engleking has a solid work history, and worked for years at a forging facility doing skilled and heavy exertion work until his conditions no longer permitted that activity. In the years that followed, he underwent surgeries and treatment for very serious hip problems, and just prior to the administrative hearing, found some work that he could do on a limited basis. He was working—up to 15 hours per week at minimum wage—driving persons periodically to doctor's appointments, and there is no indication that his work activities are inconsistent with Mr. Engleking's descriptions of the limiting effects of his impairments and the pain he endures because of those impairments.

The ALJ suggested that this work activity reflected negatively on his credibility (R. 20), but logically the work activity reflects positively on Mr.

14

Engleking's credibility. *See Stark v. Colvin,* 813 F.3d 684, 689 (7th Cir. 2016) (among other problems with ALJ's credibility finding, the ALJ should have acknowledged the claimant's efforts to continue working while experiencing significant pain and treatments to relieve it); *Pierce v. Colvin,* 739 F.3d 1046, 1051 (7th Cir. 2014) (claimant's "dogged efforts" to continue working is relevant to "credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms").

In sum, because of the above-described serious errors in the ALJ's credibility analysis, remand is required. The court cannot find harmless error because it cannot be sure that the ALJ would have reached the same conclusion about Mr. Engleking had she not made these errors. *Pierce,* 739 F.3d at 1051 ("An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding.")

## Conclusion

For the foregoing reasons, the court REVERSES AND REMANDS under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Reese E. Engleking is not disabled.

So ORDERED.

Dated: September 29, 2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system